O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIAN LICHTENBERG,LLC, a California limited liability company; BRIAN LICHTENBERG, an individual,<br><br>                Plaintiff,<br><br>     v.<br><br>ALEX & CHLOE, INC., a California corporation; CHRISTOPHER WALTER LICHTENBERG, an individual; MARKED SHOWROOM, LLC, a Californai limited liability company; JACQUELINE YI, an individual; TU TRAN, an individual KYLE MOCKETT, an individual; KAYTEE ENRIGHT, an individual,<br><br>                Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CV 13-06837 DDP (PJWx)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DIMISS (Dkt. No. 58) and GRANTING MOTION TO DISMISS (DKT. No. 57) IN PART AND DENYING IN PART**<br><br><br><br>[Dkt. Nos. 57, 58] |

     Presently before the court are Defendants' two Motions to Dismiss Plaintiff's First Amended Complaint.  (Dkt. Nos. 57 and 58.)  Having considered the parties' submissions, the court denies one motion in its entirety (Dkt. No. 58), and denies the other motion in part and grants it in part (Dkt. No. 57) for the following reasons.

I.   **Background**[1]

Plaintiff Brian Lichtenberg ("Brian") designs clothing and accessories and distributes his products through Brian Lichtenberg, LLC.  (First Amended Complaint ("FAC") ¶¶ 1-2, 19, 23).[2]  Brian's designs include a series of parodies of designer brands, such as "Homiès" as a play on "Hermès" and "Bucci," a parody of "Gucci." (FAC ¶ 44.)  Brian's spoof or parody logos mimic the style, font, and other elements of the luxury brand designs.  (FAC, Ex. A.) Brian sells t-shirts, muscle tees, sweatshirts, beanies, and hats bearing the various spoof designs.  (FAC ¶ 45.)  Brian alleges that his designs are very successful, and are frequently worn by celebrities and featured in the media.  (FAC ¶ 43.)

Brian's younger brother, Defendant Christopher Walter Lichtenberg ("Chris"), is the sole shareholder or director of Defendant Alex and Chloe, Inc. ("A&C").  (FAC ¶¶ 3-4.)  Between 2010 and 2013, Brian allowed his merchandise to be sold on consignment on A&C's website "as a favor to Chris."  (FAC ¶ 57.) Brian and A&C orally agreed that Brian would receive a portion of the proceeds from sales of his products on the A&C website.  (Id.)

The FAC alleges that in January 2012, Brian developed one particular parody design, "Ballin," as a play on the luxury brand "Balmain."  (FAC ¶ 54.)  By November 2012, Chris was working as a "part-time contractor" for Brian.  (FAC ¶ 62.)  Chris' duties

---

[1] The Court assumes the truth of the material factual allegations in the First Amended Complaint solely for purposes of deciding the motions to dismiss.

[2] Hereinafter, this Order frequently refers to Plaintiffs Brian Lichtenberg and Brian Lichtenberg, LLC, collectively, as "Brian."

included graphic design and promotional work related to Brian's "Ballin with My Homies" project. (FAC ¶¶ 62, 65.) In connection with those duties, Chris allegedly had access to confidential lists of Brian's customers and industry contacts. (FAC ¶¶ 62-62.)

Plaintiffs allege that Chris, while employed by Brian, slowed down the launch of Brian's "Ballin" products as part of a scheme to steal the design and launch a similar A&C product. (FAC ¶¶ 70-1.) The FAC alleges that Chris copied and claimed ownership of the "Ballin" design, contacted Brian's manufacturer and requested that products identical to Brian's be made under the A&C label, and used Brian's confidential customer lists to sell the A&C items. (FAC ¶¶ 70, 72, 74, 77.) Chris listed his products for sale on the A&C website in late January or early February 2013, before Brian's "Ballin" products came to market. (FAC ¶ 78.)

Chris repeatedly claimed to own the "Ballin" design via the internet and social media. (FAC ¶ 83.) Chris also contacted several of Brian's buyers, stated that Brian's "Ballin" products were counterfeits, and asked that retailers stop selling Brian's "Ballin" products. (FAC ¶¶ 81-82.) Chris then made further public statements claiming that Brian had stolen not only the "Ballin" design, but other parody designs as well. (FAC ¶¶ 89, 92.) At Chris's request, social media sites removed images of Brian's "Ballin" apparel posted to Brian's pages. (FAC ¶ 97.)

Chris and A&C then expanded their offerings to include other products similar to Brian's, featuring other parody designs beyond "Ballin." (FAC ¶¶ 104, 111.) Chris also appropriated photographs

of celebrities wearing Brian's products, then posted them to A&C's websites and claimed that those celebrities endorsed A&C.  (FAC ¶ 107, 109-110.)

In March 2013, Plaintiffs filed suit against Chris and A&C in Los Angeles County Superior Court.  Plaintiffs later dismissed their state court action and, on September 17, 2013, filed the instant suit in this court.  Plaintiffs' FAC alleges nine causes of action against Defendants, including unregistered trademark and trade dress infringement, unfair competition, and trademark dilution under Section 43 of the Lanham Act, 15 U.S.C. § 1125, as well as state law causes of action.  Defendants now move to dismiss the FAC.  Defendants, all represented by the same counsel, filed two separate motions to dismiss.  The bulk of this Order addresses the lengthier of the motions ("Motion") at Docket Entry 57.  The court discusses the second, shorter motion at Docket Entry 58 in section III(J), below.

## II.  Legal Standard

Though Defendants style their Motion as both a jurisdictional challenge under Rule 12(b)(1) and motion for failure to state a claim under Rule 12(b)(6), their supporting memorandum argues that jurisdiction is lacking because Plaintiffs fail to state a Lanham Act claim.  (Mot. at 12.)  Where a motion under Rule 12(b)(1) attacks the allegations of the complaint, the court applies the same standard as under Rule 12(b)(6).  Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979);

Org. for Advancement of Minorities with Disabilities v. Brick Oven Restaurant, 406 F.Supp.2d 1120, 1124 (S.D. Cal. 2005).

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a

"context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

**III. Discussion**

    A.  Relevant Allegations

    Defendants go to great lengths to recount their version of events related to the dispute between Brian and Chris. (Mot. at 4-12.) Defendants support their factual position with extensive citations to Chris' declaration, filed in connection with earlier motion practice before this court, as well as with factual descriptions of state court proceedings that are neither alleged in the FAC nor supported by exhibits. As an initial matter, the court reiterates that on this Rule 12(b)(6) motion, it must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." <u>Resnick</u> 213 F.3d at 447.

    Citing <u>Bradley v. Chiron Corp.</u>, 136 F.2d 1317 (Fed. Cir. 1998), Defendants argue that several of the FAC's allegations contradict Plaintiffs' earlier allegations, and should be stricken as a sham. (Mot. at 8.) The Ninth Circuit, however, has explicitly declined to follow <u>Bradley</u>. <u>PAE Gov't Servs., Inc. v. MPRI, Inc.</u>, 514 F.3d 856, 859 (9th Cir. 2007). As the <u>PAE</u> court explained, absent a showing of bad faith, nothing in the Federal Rules of Civil Procedure prevents a party from making inconsistent

///

///

///

allegations or empowers this court to strike even contradictory pleadings.[3] Id. at 858-60.

Lastly, Defendants contend that certain allegations conflict with exhibits referenced in the complaint, and should be stricken on that basis. (Mot at 10-11.) This court need not accept as true allegations that contradict exhibits attached to or referenced by a complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); United States v. Ritchie, 942 F.3d 903, 908 (9th Cir. 2003). Specifically, Defendants ask that the court strike allegations regarding (1) an e-mail from Kanye West and (2) a promotional flyer featuring Brian and a "Ballin With My Homies" sweatshirt.

As to the e-mail, the FAC alleges that Kanye West sent Brian an e-mail that discussed the word "Ballin." (FAC ¶ 53.) Contrary to Defendants' assertion, the FAC does not allege that the e-mail involved a discussion of a design featuring the term "Ballin." Furthermore, Defendants appear to misidentify the message in question. While Defendants point to Exhibit 10 to Exhibit N of their request for judicial notice, filed on October 21, 2013 in connection with an earlier motion, that exhibit is an e-mail message between Chris and Brian on an unrelated subject. (Dkt. No 42-2 at 27). Further, Defendants' request that the court accept their contention that the term "Ballin," as used in the e-mail,

---

[3] While Defendants' Reply makes some brief mention of bad faith, Defendants have not moved for sanctions, nor do their moving papers make any reference to Rule 11. See PAE, 514 F.3d at 860 (explaining that a showing of bad faith can only be made after the accused party has been given the opportunity to respond in accordance with Rule 11).

does not mean what the FAC alleges it to mean runs afoul of the requirement that all inferences be drawn in Plaintiffs' favor.  See TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

Similarly, the exhibits cited by Defendants with respect to the promotional flyer are not what Defendants purport them to be. In any event, Defendants again mischaracterize the FAC, which alleges that the flyer featured a picture of Brian in a "Ballin With my Homies" sweatshirt, and not, as Defendants contend, anything to do with "Ballin Paris." (FAC ¶ 62.)  Again, the meaning of the term "Ballin," as used in the flyer, is debatable, and construed in Plaintiffs' favor at this stage.

The court therefore declines to strike any of the allegations in the FAC, and proceeds to discuss the sufficiency of the pleadings of Plaintiffs' claims.

B.   Count 1: Trademark and Trade Dress Infringement

i.   Trademark Infringement

The FAC raises a cause of action for unregistered trademark and trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The FAC alleges (1) "wrongful use of the name 'Ballin' and 'Ballin Paris'" and (2) wrongful use of certain trade dress, described in further detail below.  Nevertheless, Plaintiffs make clear that they "are not seeking blanket protection for the use of the slang term 'Ballin' or the term 'Ballin Paris.'"  (Opp. at 12.)  The allegations in Count 1, however, make no reference to any other trademark.  Given Plaintiffs' apparent concession that the terms themselves are not the trademarks, Defendants' Motion to

1  Dismiss is granted, insofar as it relates to trademark
2  infringement.[4]

3          ii.  Trade Dress Infringement

5      Trade dress, or the "total image of a product," is protectable
6  under Section 43(a) of the Lanham Act.  Int'l Jensen, Inc. v.
7  Metrosound U.S.A., Inc., 4 F.3d 819, 822 (9th Cir. 1993).  To
8  succeed on a trade dress infringement claim, which is analytically
9  similar to an unregistered trademark claim, plaintiffs must show
10 that a trade dress is nonfunctional, is distinctive or has acquired
11 secondary meaning, and that a defendant's use of a similar mark or
12 trade dress is likely to confuse consumers.  Id. at 823.

    The FAC identifies trade dress comprised of:

    1.   40-weight cotton cut, dyed, and enzyme washed in a
         signature way with a screen printed logo inside the
         neck;[5]

    2.   an oversized, bulky, shapeless cut;

    3.   red, hot pink, orange, and black colors;

    4.   damask main labels folded to 3.5 x. 1.25 inches and 50/50
         cotton/polyester size labels folded to 1.25 x 1.625
         inches;

    5.   woven stitching;

    6.   hang tags with a Century Gothic font;

    _____

    [4]  This concession also appears to vitiate Defendants'
    arguments regarding first use of the "Ballin" term.  (Mot. at 13.)
    While Defendants appear to suggest a first use argument with
    respect to trade dress claims (Reply at 7), nowhere do Defendants
    claim to have used the alleged trade dress, discussed below, prior
    to Brian's 2010 use.

    [5]  Plaintiffs do not explain how the neck portion would apply
    to beanies and hats, both of which, Plaintiffs contend, feature the
    protected trade dress.

7. minimal graphics that center around high end luxury, centered on the chest;

8. white, black, and gold embroidery (only on beanies and hats); and

9. logo placement in a large font in the middle of the garment.

FAC ¶ 45.

### 1. Functionality

Defendants contend that Plaintiffs' trade dress is functional, and therefore unprotectable. (Mot. at 15.) In analyzing functionality, courts look to "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantage of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1260 (9th Cir. 2001) (citing Disc Golf Assoc., Inc. v. Champion Discs, Inc., 158 F.3d 1002, 1006 (9th Cir. 1998)). The focus is not on the individual elements constituting a trade dress, but rather the "overall visual impression" and "composite tapestry of visual effects." Id. at 1259. Purely aesthetic features cannot be functional. Id. at 1260.

Defendants argue that competitors would be at a significant disadvantage if they were unable to use "pre-manufactured cotton t-shirts with stitching, black labels, and logos that are placed on the front, center of each t-shirt." (Mot. at 15.) Defendants, however, set up a straw man. Plaintiffs' FAC does not identify so general or amorphous a trade dress. While the trade dress at issue

10

1   does include some of the elements Defendants identify, it also is

2   comprised of specific colors, fonts, subject material, styles, and

3   textures.  These elements combine to form a distinctive, unitary

4   whole notable for its aesthetic properties.  Plaintiffs have

5   sufficiently alleged nonfunctional trade dress.

6                  2.   Secondary Meaning

7

8        Trade dress acquires secondary meaning when consumers

9   associate the dress with a particular source.  Clicks Billiards,

10  251 F.3d at 1262.  If a design has only an aesthetic effect, with

11  no source-identifying function, it is not protectable.  Id.  Here,

12  Plaintiffs' opposition does not specifically address the FAC's

13  allegations regarding secondary meaning.  The FAC, however,

14  repeatedly alleges that consumers "instantly recognize" Brian's

15  designs and products (FAC ¶¶ 16-17), that "the public has come to

16  know [the trade dress] exclusively as hallmarks" of Brian's

17  products (FAC ¶ 45), and that consumers have been confused when

18  presented with images of A&C products bearing the alleged trade

19  dress. (FAC ¶ 96.)  While Defendants conclusorily assert that there

20  is no secondary meaning attached to Plaintiffs' design (Mot. at

21  15), whether the alleged trade dress has actually acquired

22  secondary meaning is a question of fact for another day.  Clicks

23  Billiards, 251 F.3d at 1262.  For purposes of a Rule 12(b)(6)

24  analysis, secondary meaning is adequately alleged.  Defendants'

25  Motion is denied with respect to Plaintiffs' trade dress

26  infringement claims.

27

28       C.   Count 2:  False Designation of Origin

1    The FAC alleges that "Defendants' unlawful copying and use of
2  PLAINTIFFS's [sic] registered Trade Dress Marks in connection with
3  their footwear products is a false and misleading designation of
4  origin and a false and misleading representation of facts . . . ."
5  (FAC ¶ 122.)  Plaintiffs acknowledge that these allegations need to
6  be amended to correct certain "typographical errors." (Opp. at
7  13.)  Specifically, Plaintiffs seek to change "registered Trade
8  Dress marks" to "unregistered Trade Dress Marks," and to replace
9  "footwear" with "t-shirt, sweatshirt, beanie, and baseball cap."
10  (Id.)

11    "Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),
12  prohibits the use of false designations of origin, false
13  descriptions, and false representations in the advertizing [sic]
14  and sale of goods and services." Jack Russell Terrier Network v.
15  Am. Kennel Club, Inc., 407 F.3d 1027, 1036 (9th Cir. 2005).
16  Plaintiffs appear to base their false designation of origin claims
17  on the allegations that Chris appropriated pictures of celebrities
18  wearing Brian's products, then posted those pictures on Chris' and
19  A&C's websites, thus giving the impression that the celebrities
20  were wearing and/or endorsing A&C's products instead of Brian's.
21  (Opp. at 14.)

22
23    Defendants assert, without any support, that allowing
24  Plaintiffs to amend would be futile.  (Reply at 12:28.)  The court
25  disagrees.  The FAC already includes the factual allegations
26  described above, which could conceivably support a false
27  designation claim if applied to the proper apparel.  Accordingly,
28  Plaintiffs' second cause of action is dismissed with leave to

1   amend.

2       D.    Count 3:    Trademark Dilution

3

4       Plaintiffs do not acknowledge any typographical errors in

5   their third cause of action for trademark dilution.  Defendants are

6   correct, however, that this claim, as currently pled, refers only

7   to trade dress "on footwear products."  (FAC ¶ 25.)  To state a

8   viable Lanham Act dilution claim, Plaintiffs must allege that they

9   own a famous, distinctive mark or dress, Defendants have used a

10  nearly identical mark in commerce after Plaintiffs' mark became

11  famous, and Defendants' use is likely to dilute or blur Plaintiffs'

12  mark.  <u>Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.</u>, 633

13  F.3d 1158, 1161 (9th Cir. 2011).  While the FAC does not adequately

14  allege dilution with respect to any footwear trade dress, it

15  appears, as above, that Plaintiffs may be able to plead a viable

16  claim upon amendment.  The third cause of action is therefore

17  dismissed with leave to amend.

18      E.    Count 4:    California Uniform Trade Secrets Act

19

20      The FAC alleges a cause of action against Chris and A&C for

21  misappropriation of trade secrets in violation of California's

22  Uniform Trade Secrets Act ("CUTSA"), California Civil Code § 3426.

23  (FAC ¶¶ 130-141.)  To prevail on a CUTSA claim, a plaintiff must

24  show that (1) he owned a trade secret, (2) the defendant acquired,

25  used, or disclosed that secret through improper means, and (3) the

26  plaintiff was damaged.  <u>Cytodyn, Inc. V. Amerimmune Pharms., Inc.</u>,

27  160 Cal. App. 4th 288, 297 (2008).  The California Civil Code

28  defines "trade secret" as information that "(1) [d]erives

independent economic value . . . from not being generally known to the public . . .; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d).

Here, Count 4 of the FAC alleges misappropriation of Brian's customer lists, manufacturer lists, product specifications, and "manner of manufacture."[6] (FAC ¶¶ 131-134.) The FAC alleges that these secrets "have economic value in that it is information not generally known to other apparel designers and represented many years of research and client communications." (FAC ¶ 135.) The FAC further alleges that Chris copied these secrets while working as Brian's employee, then used the secrets to create and sell imitation items. (FAC ¶¶ 137-138.)

Defendants first argue that the FAC fails to allege that Chris had access to the alleged secrets. The court disagrees. The FAC states that in January 2013, Chris "misappropriated [the secrets] by copying them, [and] leaving the employment of Plaintiffs . . . ." (FAC ¶ 137.)

Second, Defendants contend that customer and manufacturer lists are not secrets because customer and manufacturer contact information is publicly available. (Mot. at 22.) For support, Defendants selectively quote Mor-Life, Inc. v. Perry, 56 Cal. App. 4th 1514 (1997). Indeed, the Mor-Life court stated that "courts are reluctant to protect customer lists to the extent they embody

---

[6]   While the FAC does elsewhere refer to the "Ballin" parody design as a trade secret (FAC ¶ 68), that supposed secret is not specifically identified in Count 4.

information which is 'readily available' through public sources, such as business directories." Mor-Life, 56 Cal. App. 4th at 1521. In the very next sentence, however, the court explained, "On the other hand, where the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market." Id. "It is well-established that a customer list may constitute a protectable trade secret." Gable Leigh, Inc. v. North Am. Miss; No. CV 01-01019 MMM(SHX); 2001 WL 521695 at *15 (C.D. Cal. Apr. 13, 2001). While Defendants disagree with the FAC's allegations that Brian expended time, energy, and money compiling contact lists, such allegations must be accepted as true at this stage. Resnick, 213 F.3d at 447.

Lastly, Defendants argue that the FAC does not adequately describe Brian's secret manufacturing process. (Mot. at 23.) "If the subject matter of the claimed trade secret is a manufacturing process, the plaintiff must . . . supply sufficient data concerning the process, without revealing the details of it, to give both the court and defendant reasonable notice of the issues . . . ." Pellerin v. Honeywell Int'l, Inc., 877 F.Supp.2d 983, 988 (S.D. Cal. 2012). Plaintiffs posit that "the trade secret in the present case is not the manufacturing process, per se, but rather the specifications for the manufactured product." (Opp. at 18::12-13.) The FAC, however, mentions both "manner of manufacture," including "unique stitching, the fabrics, the size and placement of the labels, and the color schemes" (FAC ¶ 133) as well as "product specifications." (FAC ¶ 134.) Nonetheless, the court will take

Plaintiffs at their word that they did not intend to include manner of manufacture in their claim.  Accordingly, Plaintiffs' CUTSA claims regarding manner of manufacture are dismissed, with leave to amend.

F.   Count 5:  Unfair Competition

For the reasons stated above, at least some of Plaintiffs' Lanham Act and CUTSA claims are adequately pled.  Plaintiffs' claim for unfair competition under California Business & Professions Code § 17200, therefore, also survives to the extent it is derivative of those claims.  See Cal. Bus. & Profs. Code § 17200 ("[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act . . . .").

G.   Counts 6 and 7:  Intentional Interference with Prospective Economic Advantage and Contractual Relations

Defendants argue that Plaintiffs do not identify any specific third parties with whom Plaintiffs had an economic relationship or any specific contracts with those customers.  (Mot. at 24-25.) Defendants ignore, among other allegations, paragraph 81 of the FAC, which specifically lists ten different companies with which Brian maintained economic and contractual relations.  The FAC describes at least three of these relationships in detail.  (FAC ¶¶ 82,84, 87.)  Defendants appear to abandon this argument in their Reply, instead referring again to the "Ballin" marks, in which Plaintiffs have disclaimed any interest, as described above. Counts 6 and 7 are adequately pled.

H.   Count 8:   Defamation, Libel, and Slander

1    Defendants assert that Count 8's claim  for defamation, libel,

2   and slander must be dismissed because (1) Plaintiffs have not

3   provided any evidence that Brian created the "Ballin" design, (2)

4   "Defendants have been adamant that they created "Ballin Paris" and

5   truth is an absolute defense," and (3) Plaintiffs do not allege

6   that any statements were made orally.

7
     Again, Defendants misapprehend the standard for a Motion to
8
    Dismiss.  Plaintiffs need not present any evidence at this stage,
9
    and Defendants' version of the facts, no matter how adamantly
10
    stated, is not relevant.
11

12    As to slander, Plaintiffs do not identify, nor does the FAC

13   appear to allege, any oral statements.  Accordingly, Plaintiffs'

14   slander claim is dismissed, with leave to amend.  <u>See</u> <u>Aber v.</u>

15   <u>Comstock</u>, 212 Cal. App. 4th 931, 948 (2012); Cal Civ. Code § 46.

16
     I.   Count 9:  Common Count
17

18    Lastly, Plaintiffs' claim for common count, apparently for

19   money due, alleges that Chris owes Brian $30,000 in proceeds from

20   consignment sales of Brian's products on the A&C website.  (FAC ¶

21   184, 186).  Contrary to Defendants' claim that the FAC does not

22   identify the time span or nature of the agreement, the FAC states

23   that Brian made an oral agreement with A&C, and that the agreement

24   was in effect between 2010 and 2013.  (FAC ¶¶ 56-58.)  "The only

25   essential allegations of a common count are (1) the statement of an

26   indebtedness of a certain sum, (2) the consideration . . ., and (3)

27   nonpayment.  <u>Farmers Ins. Exchange v. Zerin</u>, 53 Cal. App. 4th 445,

28

460 (1997) (internal quotation and citation omitted).  Count 9 is adequately pled.

    J.   The Second Motion:  Defendants Marked, Tran, Yi, Enright and Mockett

    i.   Background

Defendant Marked Showroom, LLC agreed to sell A&C products and provide public relations services to Chris and A&C.  (FAC ¶¶ 5, 98.)  Defendants Yi and Tran (collectively with Marked, the "Marked Defendants") are alleged to be Marked's shareholders, officers, principals, or employees.  (FAC ¶¶ 6-7.)  The FAC alleges that the Marked Defendants are assisting Chris and A&C's infringing activities.  (FAC ¶ 108.)  The Marked Defendants are alleged to falsely claim on their website that various celebrities, including celebrities who wear or endorse Brian's products, endorse A&C's products.  (FAC ¶ 107.)  Defendant Tran is named only in Count 5 for unfair business practices.  Defendants Marked and Yi are named in Count 5 and the three Lanham Act counts.

Defendants Mockett and Enright are alleged to be employees or agents of A&C.  (FAC ¶¶ 8-9.)  Mockett and Enright allegedly agreed to "participate in the selling of the A&C Defendants' Imitation Ballin merchandise."  (FAC ¶ 101.)  Defendants Mockett and Enright are only named in Count 5 for unfair business practices.

    ii.  Marked Defendants

Defendants argue that the FAC does not allege any Lanham Act claims against the Marked Defendants.  Defendants are mistaken.

The FAC alleges that Marked falsely represents that A&C products sold on the Marked website are endorsed by certain celebrities, including Brian's endorsers. (FAC ¶ 107.) Furthermore, sellers of infringing goods may be liable for violations of the Lanham Act. See Philip Morris USA Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1073-74 (C.D. Cal. 2004); BMW of North Am. v. DinoDirect Corp., No. C 11-04598, 2012 WL 6000573 at *3 (N.D. Cal. Nov. 30, 2012).

Defendant Yi and Tran are alleged to be owners or directors of Marked. (FAC ¶¶ 6-7.) Corporate officers are generally liable for Lanham Act violations that they authorize or direct. See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co, 173 F.3d 725, 734 (9th Cir. 1999). While Defendants appear to suggest that Yi and Tran cannot be held liable for acts undertaken within the scope of their employment (Reply at 6), Defendants cite no authority for that proposition.[7]

iii. Enright and Mockett

Similarly, Defendants argue that Defendants Enright and Mockett are not alleged to have acted beyond the scope of their employment at A&C. As above, Defendants do not explain why Enright and Mockett's employment status would absolve them of liability for their individual acts.

K. Colorado River Abstention

_____

[7] Given the identical allegations regarding Yi and Tran's activities and relationship to Marked, it is unclear why Tran is named only in Count 5, while Yi is named in Count 5 and the three Lanham Act causes of action.

19

Defendants also request that this court stay this case during the pendency of state court proceedings under the Colorado River doctrine.  See Colorado River Water Cons. Dist. v. United States, 424 U.S. 800, 813-19 (1976).  While the basis for Defendants' request is somewhat unclear, it appears to be premised upon Plaintiffs' state court suit regarding ownership of the "Ballin" design (Opp. at 22.)  Defendants have not cited to any exhibits regarding that litigation, the scope and status of which is unknown to this court.  In any event, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  Colorado River, 424 U.S. at 817 (internal quotation and citation omitted).  Indeed, even the "potential for conflict in the result of adjudications does not, without more, warrant staying exercise of federal jurisdiction." Id. at 816.  Furthermore, the resolution of the state court case, from what the court can discern, would have no bearing on the Lanham Act claims brought here, which may or may not subsume the design ownership question presented in state court.  Accordingly, the court declines to stay this litigation.

**IV.   Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss (Dkt. No. 58), filed on behalf of Defendants Marked, Yi, Tran, Enright, and Mockett, is DENIED in its entirety.

Defendants' other Motion to Dismiss (Dkt. No. 57) is GRANTED in part.  Plaintiffs' Second and Third Counts for False Designation of Origin and Dilution, Count 4 CUTSA claim for "manner of

manufacture," and Count 8 claim for slander are DISMISSED, with leave to amend.  Plaintiffs' Count 1 claim for trademark infringement regarding "Ballin" and "Ballin Paris" is dismissed with prejudice.  In all other respects, Defendants' Motion is DENIED.

Plaintiffs shall have 15 days from the date of this Order to file a Second Amended Complaint.  Defendants shall file their response within 15 days after service of any amended pleading.

IT IS SO ORDERED.

DATED:   February 13, 2014

DOLLY M. GEE FOR
HONORABLE DEAN D. PREGERSON